A-41

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it, or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you ow rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "cove territory" and during the policy period

(2) The expenses are incurred and repo to us within one year of the date of accident; and

(3) The injured person submits to exam tion, at our expense, by physicians of choice as often as we reasonably requ

b. We will make these payments regardless fault. These payments will not exceed applicable limit of insurance. We will reasonable expenses for:

(1) First aid administered at the time of accident;

(2) Necessary medical, surgical, x-ray a dental services, including prosthetic vices; and

(3) Necessary ambulance, hospital, profe signal nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on beha of any insured or a tenant of any insured.

c. To a person injured on that part of premise you own or rent that the person normally oc cupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily in jury" are payable or must be provided under a workers compensation or disability benefit law or a similar law.

e. To a person injured while taking part in ath letics.

f. Included within the "products-completed op erations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Copyright, Insurance Services Office, Inc., 1994

**A-43**

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

   Copyright, Insurance Services Office, Inc., 1994   CG 00 01 01 96

A-44

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

CG 00 01 01 96          Copyright, Insurance Services Office, Inc., 1994             □

Case 1:07-cv-08700-NRB     Document 1-3     Filed 10/09/2007     Page 5 of 38

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C;

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

## A-46

**c. You and any other involved insured must:**

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Copyright, Insurance Services Office, Inc., 1994

A-47

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

A-48

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

A-48.1

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above, maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   Copyright, Insurance Services Office, Inc., 1994   CG 00 01 01 96

This Page Left Blank Intentionally

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

EXHIBIT B

**Declarations** *eↄlↄp* **EXCESS LIABILITY POLICY**

**POLICY NUMBER:** XEK-000-8382-8616

FIREMAN'S FUND INSURANCE COMPANIES

**POLICY PERIOD:** FROM 05/15/99 TO 05/15/00
(12:01 A.M. Standard time at the address
of the Named Insured as stated herein)

Coverage is provided in the following
company, a stock company.

07 National Surety Corporation

**NAMED INSURED AND MAILING ADDRESS:**
CITY CLUB HOTEL, L.L.C.
SHELBY REALTY, L.L.C. (AS OWNER)
55 WEST 44TH STREET
NEW YORK, NY 10001

In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

**CLAIMS MADE**
Part or all of this policy may apply on a claims made basis.

**RETROACTIVE DATE**
When this policy applies on a claims made basis, it does not apply to injury
or damage which occurs before the retroactive date shown below:
Not Applicable Retroactive Date

**PRIOR INCIDENTS**
The Named Insured warrants no knowledge of any incident which has taken
place prior to the effective date of this policy for which claim may be made
under this policy other than NONE.

**LIMITS OF INSURANCE**
$9,000,000  Each Occurrence          $9,000,000  Aggregate

**PREMIUM**

Basis of premium:   Flat charge

Advance Premium: $6,400      Annual Minimum Premium: $6,400

**SCHEDULE OF PRIMARY INSURANCE**

This schedule is described within Form No. 178199-1-86 which forms a part of
this policy's declarations.

Endorsements attached to and forming a part of this policy at inception:

| | | |
|---|---|---|
| 178206 12 87 | 178340 03 89 | 178472 02 92 |
| 178308 01 86 | 178382 08 86 | 178520 07 98 |
| 178312 12 92 | 178437 03 91R | |
| 178323 08 88 | 178454 09 90 | |
| 178338 03 89 | 178466 07 91 | |

CHECKED BY: C8
DATE: 6/9/99
INVOICE #
FINANCED
DIRECT BILL

Date of Issue:
05/18/1999

Countersignature of Authorized Agent:

This declarations page is issued in conjunction with and forms a part of Policy Form 5191 01-86.

| Und Group C | Branch NJB | Producer Code 31 490 223 00 | Producer GARBER, ATLAS, FRIES & ASSOC. | | Comm. 15.00% |
|---|---|---|---|---|---|
| Audit Frequency 0 | | | | Previous Policy No. NEW | |

ESRDEC2 1-87 2040

PROD

EP1   05   EFEG.01S2.A12E301

001084A



## SCHEDULE OF PRIMARY INSURANCE - 178199-1-86S

The schedule of Primary Insurance is completed to read as follows:

COMMERCIAL GENERAL LIABILITY

    Company:     U. S. UNDERWRITERS INS. CO.
    Policy No:    AS ASSIGNED BY COMPANY
    Expiration Date: 05/15/2000

                                           LIMITS OF LIABILITY

General Aggregate Limit
   (Other Than Products-Completed Operations)  $2,000,000
        Personal & Advertising Injury Limit  $1,000,000
                  Each Occurrence Limit  $1,000,000

PRODUCTS INCLUDED IN GENERAL AGGREGATE



## Asbestos Exclusion - 178206 12 87
Excess Liability Policy

The policy does not apply to any liability arising, in whole or in part, out of or in any way related to "Asbestos".

As used in this exclusion, the term "Asbestos" includes but is not limited to, asbestos, asbestos products, asbestos fibers, asbestos dust, and asbestos contained in products or materials.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                    President

178206 12-87



## Contractors Exclusion - 178308 01 86
Excess Liability Policy

With respect to construction, demolition or other contracting operations performed by or on behalf of the **insured**, the policy does not apply to any liability arising out of:

A. The ownership, operation, maintenance, use, loading or unloading of cranes or scaffolding while leased, loaned or rented to others; or

B. Operations by or on behalf of any **insured** in connection with any project for which insurance is or was at any time afforded under a "Wrap-up" or similar plan.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary                                          President

178308 1-86

**DESIGNATED PREMISES OR PROJECT LIMITATION - 178312 12 92**
Excess Liability Policy

The policy applies only to liability arising out of:

A.   The ownership, maintenance or use of the premises shown below; or

B.   The project shown below.

Description and/or location of premises and/or project:

**55 WEST 44th STREET**
**NEW YORK, NY**
All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Thomas A. Swanson
_____
Secretary
178312 12-92

Lee L. Stennette
_____
President

## Pollution - Absolute Exclusion - 178323 08 88
Excess Liability Policy

A.  EXCLUSION G. POLLUTION, is replaced by the following:

G.  POLLUTION

   (1)  To any liability, including defense, arising:

      (a)  Directly;

      (b)  Indirectly; or

      (c)  In concurrence, or in any sequence, with a cause for which coverage may be afforded by this policy, out of the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of "Pollutants".

   (2)  To any loss, cost or expense arising out of any request, demand or order issued or made pursuant to any environmental protection or environmental liability statutes or regulations that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

   "Pollutants" means one or more man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

   It is the intent and effect of this provision to exclude any or all coverages afforded by this policy for any claim, action, judgment, liability, settlement, defense or expense in any way arising out of an existence, discharge, dispersal, seepage, migration, release or escape of "Pollutants" whether such results from any **Insured's** activities or the activities of others and whether or not such is sudden, gradual, accidental, intended, foreseeable, expected, fortuitous, inevitable and wherever or however such occurs.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

*Janet S Moenhamer*                    *Dee L. Stennette*
Secretary                              President

178323 8-88



## Automobile Exclusion - 178338 03 89
Excess Liability Policy

The policy does not apply to any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any automobile.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                          President

178338 3-89

## Employee Injury Limitation - 178340 03 89
Excess Liability Policy

The policy does not apply to any liability arising out of any employment-related or personnel practices, policies, acts or omissions including but not limited to:

A.  Refusal to employ;

B.  Termination of employment;

C.  Coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or any violation of a person's right of privacy; or

D.  Any consequential injury or damage as a result of sections A., B. or C. above.

This exclusion applies to all claims and Suits by any person or organization for damages because of such injury or liability including damages for care and loss of services, whether any Insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of such injury or liability.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                    President

178340 3-89

## Cross Suits Exclusion (Any Insured) - 178466 07 91
Excess Liability Policy

The policy does not apply to any liability arising out of any claim or suit by any **Insured** against any other **Insured**.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                    President

178466 7-91

## Lead Exclusion - 178472 02 92
Excess Liability Policy

The policy does not apply to any liability arising in whole or in part, out of or in any way related to "Lead".

As used in this exclusion, the term "Lead" includes but is not limited to, lead, lead products, lead contained in paint, and lead contained in any products or materials.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                          President

178472 2-92

# Year 2000 Computer-Related and Other Electronic Problems Exclusion - 178520 07 98

Excess Liability Policy

The policy does not apply to any liability arising directly or indirectly out of:

A. Any actual or alleged failure, malfunction or inadequacy of:

1. Any of the following, whether belonging to any **Insured** or to others:

   a. Computer hardware, including microprocessors;

   b. Computer application software;

   c. Computer operating systems and related software;

   d. Computer networks;

   e. Microprocessors (computer chips) not part of any computer systems; or

   f. Any other computerized or electronic equipment or components; or

2. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in section A.1. of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by **You** or for **You** to determine, rectify or test for any potential or actual problems described in section A. of this endorsement.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                           President

178520 7-98

## New York Amendatory - 178382 08 86
Excess Liability Policy

A.  CONDITION P. BANKRUPTCY., is added to the policy as follows:

   **P.  Bankruptcy.**

   Bankruptcy or insolvency of any **Insured** or of any **Insured's** estate will not relieve **Us** of **Our** obligation under this policy.

B.  CONDITION I. NOTICE OF OCCURRENCE, CLAIM OR SUIT, INSURED'S DUTY., section (4) is added as follows:

   (4)  Notice given by or on behalf of any **Insured**, or written notice by or on behalf of any injured person or any other claimant, to any agent of **Ours** in New York State, with particulars sufficient to identify the **Insured**, shall be considered notice to **Us**.

C.  It is hereby understood and agreed that, notwithstanding anything in the policy to the contrary, with respect to such insurance as is afforded by the policy, the terms of the policy as respects coverage for operations in the State of New York shall conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Insurance Department; provided, however, that **Our** Limits of Insurance as stated in the policy shall be excess of the Limits of Insurance of any underlying insurance or self-insurance as stated in the Declarations or in any endorsement attached hereto.

D.  CONDITION K. PAYMENT OF LOSS, ACTION AGAINST COMPANY., the first paragraph is replaced by the following:

   We shall be liable for payment under this policy only after (1) the **Insured** and the **Primary Insurers** have paid or become obligated to pay the applicable amount or amounts of such insurance, (2) the **Insured** and the **Primary Insurers** have fulfilled or agreed to fulfill their obligation to defend and pay expenses, and (3) final judgement has been rendered against the **Insured**, subject, if applicable, to the provisions of CONDITION B. ARBITRATION., or after written agreement has been reached by the **Insured**, the claimant, the **Primary Insurers**, and **Us**. Any claim against **Us** by the **Insured** under this policy shall be made within twelve (12) months after the **Insured** pays or becomes obligated to pay an amount of damages in excess of the amount of **Primary Insurance** or **Other Insurance**.

E.  CONDITION E. CANCELLATION., sections (1), (2), (2) (a), and (2) (b) are replaced by the following:

   (1)  This policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary                                      President

178382 8-86

(2) This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in the Declarations written notice stating when not less than twenty (20) days thereafter such cancellation shall be effective, provided, however, that after the policy has been in effect for sixty (60) days, it can be cancelled subject to fifteen (15) days advance notice only for one or more of the following reasons:

   (a) Nonpayment of premium;

   (b) Any Insured or someone acting on its behalf is convicted of a crime arising out of acts that increase the hazards insured;

   (c) The discovery of fraud or material misrepresentation on the part of the Insured in obtaining the policy or presenting a claim;

   (d) An act, omission or violation of a policy condition by any Insured after the policy has been issued or renewed substantially and materially increases the hazards insured;

   (e) Material changes in the nature and extent of the risk within any Insured's control take place after policy issuance or renewal and result in uninsurability; or

   (f) The Superintendent of Insurance determines that the continuation of the present premium volume would jeopardize the insurer's solvency or injure the interests of policyholders or the public, or continuing the policy itself would violate Insurance Law.

F. CONDITION E. CANCELLATIONS., the following sentence is added to section (4):

Delivery of such written notification either by the Named Insured or by the Company shall be equivalent to mailing.

G. CONDITION O. NONRENEWAL., is added as follows:

   O. NONRENEWAL.

   The Company will renew this policy unless written notice of the Company's intent not to renew is mailed to the Named Insured at the address shown in the Declarations. If such notice is mailed less than sixty (60) days before the policy expires, then the expiration date of the policy shall be extended so that such notice is mailed sixty (60) days before the policy expires. The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice by the Company shall be equivalent to mailing.

All other terms and conditions of the policy remain unchanged.

178362 8-86

## Additional Policy Provisions - 178437 03 91R
Excess Liability Policy

A.  The second paragraph at the top of Page 1 of 9 of the policy, which begins with the words "Wherever boldfaced in this policy", is replaced by the following:

Wherever used in this policy:

(a)  The words **You**, **Your** and **Insured** refer to any person or organization for which insurance is provided by this policy; and

(b)  The words **We**, **Us** and **Our** refer to the Company providing this insurance.

B.  The fourth paragraph at the top of page 1 of 9 of the policy, which begins with the words "Other words and phrases", is replaced by the following:

Other words and phrases that are boldfaced in this policy or that are boldfaced and/or underlined in the endorsements attached to this policy have special meaning.

Refer to the DEFINITIONS section of this policy.

C.  INSURING AGREEMENT SECTION III, B. AGGREGATE LIMIT, the following paragraph is added:

Regardless of the terms of **Primary Insurance** or **Other Insurance** or anything contained in any part of INSURING AGREEMENTS III - LIMITS OF INSURANCE, if, after the policy has been issued, **We** extend the Policy Period, the additional period will be deemed to be part of the original Policy Period for purposes of determining the "aggregate" Limit of Insurance. In no event will such Policy Period extension reinstate or increase the "aggregate" Limit of Insurance or increase the number of times the "aggregate" Limit of Insurance will apply.

D.  DEFINITION, G. SUIT, the second sentence is replaced by the following:

Suit includes:

(1)  An arbitration proceeding in which such damages are claimed and to which **You** must submit or do submit with **Our** consent; or

(2)  Any other alternative dispute resolution proceeding in which such damages are claimed and to which **You** submit with **Our** consent.

E.  CONDITION I. NOTICE OF OCCURRENCE, CLAIM OR SUIT, INSURED'S DUTY, the following changes are made:

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

_Jack S Kochheiser_
Secretary

_Lee L. Steinmetz_
President

178437 3-91R

Page 1 of 2

(1) The word "promptly" in section (1) is replaced by the words "as soon as practicable";

(2) The word "prompt" in section (2) is replaced by the words ", as soon as practicable,";

(3) The word "occurrence" in section (1) is replaced by the words "occurrence or of-fense".

All other terms and conditions of the policy remain unchanged.

178437 3-91R

## Nuclear Energy Liability Exclusion - 178454 09 90
Excess Liability Policy

**A.  The policy does not apply:**

  (1)  Under any Coverage, to "Injury", sickness, disease, death or "Destruction":

   (a)  With respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b)  Resulting from the "Hazardous Properties" of "Nuclear Material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  (2)  Under any Liability Coverage, to "Injury", sickness, disease, death or "Destruction" resulting from the hazardous properties of "Nuclear Material", if:

   (a)  The "Nuclear Material" (i) is at any "Nuclear Facility" owned by, or operated by or on behalf of, an Insured or (ii) has been discharged or dispersed therefrom;

   (b)  The "Nuclear Material" is contained in "Spent Fuel" or "Waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (c)  The "Injury", sickness, disease, death or "Destruction" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "Nuclear Facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "Injury" to or "Destruction" of property at such "Nuclear Facility".

**B.  As used in this exclusion:**

  "Hazardous Properties" include radioactive, toxic or explosive properties;

  "Nuclear Material" means "Source Material", "Special Nuclear Material" or "Byproduct Material";

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

_Janet S. Kloecuhemer_
Secretary

_Joe L. Stinnette_
President

178454 9-90

Page 1 of 2

"Source Material", "Special Nuclear Material", and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "Nuclear Reactor";

"Waste" means any material (i) containing "Byproduct Material" other than the tailings or "Wastes" produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "Source Material" content, and (ii) resulting from the operation by any person or organization of any "Nuclear Facility" included within the definition of "Nuclear Facility" under paragraph (a) or (b) thereof;

"Nuclear Facility" means

(a) any "Nuclear Reactor",

(b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "Spent Fuel", or (3) handling, processing or packaging "Waste";

(c) any equipment or device used for processing, fabricating or alloying of "Special Nuclear Material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "Waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to "Injury" to or "Destruction" of property, the word "Injury" or "destruction" includes all forms of radioactive contamination of property.

All other terms and conditions of the policy remain unchanged.

# QUICK REFERENCE
# EXCESS LIABILITY POLICY
### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**
Policy Period
Named Insured
Retroactive Date
Prior Incidents Warranty
Limits of Insurance
Premium
Schedule of Primary Insurance

**Beginning on Page**

**INSURING AGREEMENTS** .......................................................................................................1

  SECTION I - COVERAGES ...................................................................................................1
    A.  Occurrence Form ......................................................................................................1
    B.  Claims-Made Form ...................................................................................................2
        Extended Reporting Period ....................................................................................2

  SECTION II - DEFENSE AND EXPENSE OF CLAIMS AND SUITS ........................................2

  SECTION III - LIMITS OF INSURANCE ................................................................................3

**DEFINITIONS** ...................................................................................................................4

**EXCLUSIONS** ...................................................................................................................5

**CONDITIONS** ...................................................................................................................6
  A.  Appeals ....................................................................................................................6
  B.  Arbitration ................................................................................................................6
  C.  Assistance and Cooperation of the Insured .............................................................7
  D.  Bankruptcy of the Primary Insurer ..........................................................................7
  E.  Cancellation .............................................................................................................7
  F.  Conformity with Statute ...........................................................................................7
  G.  Maintenance of Primary Insurance ..........................................................................8
  H.  Named Insured's Representations ...........................................................................8
  I.  Notice of Occurrence, Claim or Suit, Insured's Duty ...............................................8
  J.  Other Insurance .......................................................................................................8
  K.  Payment of Loss, Action Against Company .............................................................8
  L.  Premium ...................................................................................................................9
  M.  Subrogation .............................................................................................................9
  N.  Workers' Compensation Agreement

**ENDORSEMENTS (If Any)** ....................................................................Following Page 9

PROD

00110OA    EPI    05    EFEG.0152.A1E5901

5191 1-86

# ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES
## AS DESIGNATED ON THE DECLARATIONS PAGE

**(A Stock Company, herein called the Company)**

**Mailing Address: P.O. Box 777, Novato, California  94998**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine your rights and duties, and what is and is not covered.  We will not pay sums or perform acts or services unless explicitly provided for in this policy.

Wherever boldfaced in this policy the words **You** and **Your** refer to the Named Insured shown in the Declarations and the words **We, Us** and **Our** refer to the Company providing this insurance.

The word **Insured** means any person or organization qualifying as such under the definition found in the DEFINITIONS Section.

Other words and phrases that are boldfaced have special meaning.  Refer to the DEFINITIONS section.

## INSURING AGREEMENTS

### SECTION I - COVERAGES

This coverage only applies to injury or damage covered by the **Primary Insurance**. The definitions, terms, conditions, limitations and exclusions of the **Primary Policies**, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy or relate to premium, subrogation, other insurance, an obligation to investigate or defend, the amount or limits of insurance, payment of expenses, cancellation or any renewal agreement.

Subject to the other provisions of this policy, **We** will pay on behalf of the **Insured** those sums in excess of **Primary Insurance** that the **Insured** becomes legally obligated to pay as damages.  The amount **We** will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE.

### A.  OCCURRENCE FORM

If a **Primary Policy** applies on the basis of injury or damage which occurs during the period of that policy, then this coverage shall only apply on the same basis and in a like manner to injury or damage which occurs during **Our** Policy Period.

### B.  CLAIMS-MADE FORM

If a **Primary Policy** applies on the basis of claims first made against the **Insured** during the period of that policy, then this coverage shall only apply to those claims on the same basis and in a like manner, provided:

(1)  The date such claim is first made against the **Insured** is during **Our** Policy Period, and

(2)  The injury or damage occurs on or after the Retroactive Date shown in the Declarations of this policy and prior to the termination of this policy.

5191 1-86



**Extended Reporting Period**

If a **Primary Policy** provides coverage under an Extended Reporting Period for a claim, then coverage under this policy will apply to that claim in a like manner, provided:

(1) Coverage **We** afford will only be excess of coverage under an Extended Reporting Period provided by the **Primary Policy;**

(2) The injury or damage occurs on or after the Retroactive Date shown in the Declarations of this policy and prior to the termination of this policy;

(3) The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend **Our** Policy Period; and

(4) If the **Primary Policy** requires a written request from **You** in order for its Extended Reporting Period to apply to such claim, then:

(a) **We** must also receive a written request from **You** no later than sixty (60) days after the termination of this policy, and

(b) **You** must promptly pay an additional premium to **Us** when due.

The amount of the additional premium will be determined by **Us**. This premium for **Our** Extended Reporting Period will not exceed 200% of the annual premium of this policy and will be deemed fully earned.

## SECTION II - DEFENSE AND EXPENSE OF CLAIMS AND SUITS

### A. DEFENSE

At **Our** discretion, **We** may:

(1) Investigate any occurrence or claim, and

(2) Settle any claim or **Suit** of which **We** assume charge of the settlement or defense.

When insurance is available to the **Insured** under any **Primary Insurance**, **We** will have the right and opportunity, although not the obligation, to associate with the **Primary Insurer** in the defense and control of any claim or **Suit** which, in **Our** opinion, may create liability under this policy.

**We** will assume charge of the settlement or defense of any claim or **Suit** against the **Insured** seeking damages to which this policy applies and to which no **Primary Insurance** or **Other Insurance** applies because of exhaustion of the aggregate limits of insurance of the **Primary Policies** or **Other Insurance**.

**We** will not be required to defend any claim or **Suit** after the applicable limit of **Our** insurance has been exhausted by the payment of judgments or settlements.

### B. PAYMENT OF EXPENSES

(1) With respect to any claim or **Suit** of which **We** assume charge of the settlement or defense, **We** will pay:

(a) All expenses **We** incur.

(b) Costs taxed against the **Insured** in the **Suit**.

Page 2 of 9

5191 1-86

(c) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. **We** do not have to furnish these bonds.

(d) Other reasonable expenses incurred by the **Insured** at **Our** request to assist **Us** in the investigation or defense of the claim or **Suit**, including actual loss of earnings up to $100 a day, because of time off from work.

(e) Prejudgment interest awarded against the **Insured** on that part of the judgment **We** pay. If **We** make an offer to pay prior to judgment, **We** will not pay any prejudgment interest on the amount **We** offer to pay for the period of time following that offer.

(f) Interest on the amount of any judgment that accrues after entry of the judgment and before **We** have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

(2) With respect to any claim or **Suit** to which this policy applies and for which **We** do not assume charge of the settlement or defense:

(a) **We** will pay expenses **We** directly incur at **Our** discretion.

(b) **We** will not pay expenses:

(i) Incurred by **You** or others, or

(ii) Included in any **Primary Insurance** or **Other Insurance**.

(3) Payment under (1) or (2) above, will not reduce **Our** Limit of Insurance.

## SECTION III - LIMITS OF INSURANCE

### A. OCCURRENCE LIMIT

(1) The Limit of Insurance stated in the Declarations as applicable to "each occurrence" shall be the total limit of **Our** liability for all damages arising out of any one occurrence. That limit is the most **We** will pay regardless of the number of coverages, insureds, persons or organizations sustaining injury or damage, or claims made or **Suits** brought.

(2) If the limit of insurance of the applicable **Primary Policy** applies on a basis other than each occurrence, the insurance afforded by this policy shall apply in the same manner as the applicable **Primary Policy**. Irrespective of how the insurance afforded by this policy applies, in no event shall the total limit of **Our** liability exceed the limit stated in the Declarations for "each occurrence."

(3) This insurance shall apply only in excess of the applicable Limit of Liability shown in the Schedule of Primary Insurance attached to this policy.

(a) If the applicable Limit of Liability shown in the Schedule of Primary Insurance for a **Primary Policy** applies on a claims-made basis, and if it has been reduced or exhausted by payments for claims or claims expense, then **Our** policy shall apply in excess of such reduced Limit of Liability or, if such limit has been exhausted, shall afford coverage to the extent that insurance was afforded by the **Primary Policy**; provided that:

(i) Such claim is for damages arising out of an occurrence which took place before the termination of **Our** Policy Period (but not before the Retroactive Date shown in the Declarations), and

(ii) The claim is first made against the **Insured** during **Our** Policy Period or during an Extended Reporting Period provided by this policy.

Page 3 of 9

5191 1-86

(b) If the applicable Limit of Liability shown in the Schedule of Primary Insurance for a **Primary Policy** applies on other than a claims-made basis, and if it has been reduced or exhausted by payments for damages arising out of occurrences which took place during **Our** Policy Period, then **Our** policy shall apply in excess of such reduced Limit of Liability or, if such limit has been exhausted, shall afford coverage to the extent that insurance was afforded by the **Primary Policy**.

(c) If coverage is provided by this policy in accordance with either (a) or (b) above, such coverage shall not apply on or after the inception date of the next succeeding annual period of the applicable **Primary Policy**.

## B.  AGGREGATE LIMIT

Subject to **Our** Limit of Insurance for "each occurrence" as described above, the Limit of Insurance stated in the Declarations as "aggregate" is the most **We** will pay for all damages because of injury arising out of:

(1) **Occupational Disease** sustained by employees of the **Insured**, or the spouses, children, parents or siblings of those employees; or

(2) The products-completed operations hazard as that hazard is defined in **Primary Insurance**; or

(3) Any hazard (other than those described in (1) or (2) above) for which the terms of the **Primary Insurance** provide coverage which is subject to an aggregate limit, and to which this policy also applies.

## C.  OCCURRENCE AND AGGREGATE LIMIT

If the limit of insurance available to the **Insured** under the applicable **Primary Policy** is greater than the amount shown in **Our** Schedule of Primary Insurance, this policy shall apply in excess of that greater limit.

## DEFINITIONS

As used in the policy, the following words or phrases mean:

## A.  INSURED -

(1) The **Named Insured**, and

(2) Any person or organization included as an insured or additional insured in any **Primary Policy**; provided that **Our** policy does not apply to damages arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in the Declarations of this policy as a **Named Insured**.

## B.  NAMED INSURED -

(1) The Named Insured stated in the Declarations of this policy, and

(2) Any named insured or additional named insured in any **Primary Policy**; provided that, with respect to persons or organizations included within **Primary Insurance** as named insureds after the effective date of this policy, this coverage only applies for the first ninety (90) days following the date such persons or organizations are included within **Primary Insurance** unless (a) within that ninety (90) day period **You** request **Us** to include such person or organization as a named insured, and (b) **We** agree to do so.

5191 1-86

C. OCCUPATIONAL DISEASE - A bodily injury by disease arising out of and in the usual and ordinary course of employment.

D. OTHER INSURANCE - Insurance, other than **Primary Insurance** or insurance which is specifically purchased by the **Named Insured** to be in excess of the insurance afforded by this policy, which is available to the **Insured** and affords coverage for injury or damage to which this policy applies.

E. PRIMARY INSURER - The insurer of the **Primary Insurance** or **Other Insurance** policies.

F. PRIMARY POLICY, PRIMARY POLICIES AND/OR PRIMARY INSURANCE - The policy or policies of insurance as described in the Schedule of Primary Insurance forming a part of the Declarations of this policy, including any Extended Reporting Period(s).

G. SUIT - A civil proceeding in which damages, insured by this policy, are alleged. **Suit** includes an arbitration proceeding alleging such damages to which **You** must submit or submit with **Our** consent.

## EXCLUSIONS

This Policy Does Not Apply:

A. CONTRACTUAL LIABILITY, EMPLOYEE INJURY - To any liability for injury sustained by any officer or other employee of the **Insured**, if such liability is assumed by the **Insured** under a contract or agreement made with a labor union for the benefit of such officer or employee.

B. FELLOW EMPLOYEES - To any officer or other employee as an **Insured** with respect to any injury to another officer or employee of an **Insured** injured in the course of such employment.

C. LAWS - To liability imposed on the **Insured** under any of the following: (1) Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended, (2) any uninsured motorists, underinsured motorists, or automobile no-fault or first party personal injury law, (3) any workers' compensation, unemployment compensation, or disability benefits law, except for liability of others lawfully assumed by the **Insured** under contract, or (4) any other law similar to any of the foregoing.

D. INTANGIBLE PROPERTY DAMAGE - To injury, damage, loss, destruction, or reduction in financial value of intangible property, including loss of use thereof.

E. MEDICAL EXPENSE/PAYMENTS - To coverage for medical expenses or medical payments as described in **Primary Insurance.**

F. NUCLEAR ENERGY LIABILITY - To Nuclear Energy Exposures per the Nuclear Energy Exclusion on the reverse side of the Declarations.

G. POLLUTION -
(1) To injury or damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises **You** own, rent or occupy;

(b) At or from any site or location used by or for **You** or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for **You** or any person or organization for whom **You** may be legally responsible;

Page 5 of 9

5191 1-86

such denial as stated by the **Primary Insurer**. As a condition precedent to making a claim under this policy, the **Insured**, upon **Our** request, shall initiate legal proceedings against said **Primary Insurer** to determine by final judgment the legality of its position. If such legal proceedings are unsuccessful, expenses, incurred by the **Insured** at **Our** request shall be paid by **Us**.

If the denial of coverage by the **Primary Insurer** is legally upheld because of a breach of a policy condition by the **Insured**, and if said breach is not also a breach of a condition of this policy, the insurance afforded by this policy shall apply in the same manner as though such **Primary Insurer's** policy had not been breached and had remained in full effect.

## D. BANKRUPTCY OF THE PRIMARY INSURER.

In the event of the bankruptcy or insolvency of any **Primary Insurer**, the insurance provided by this policy shall not replace such **Primary Insurance**, but shall apply in the same manner as though such **Primary Insurance** was available and collectible.

## E. CANCELLATION.

(1) The first **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to **Us** or any of **Our** authorized agents, this policy or written notice stating when thereafter the cancellation shall be effective.

(2) **We** may cancel this policy by mailing or delivering to the first **Named Insured** at the address shown in the Declarations written notice of cancellation at least:

(a) Ten (10) days before the effective date of cancellation if **We** cancel for nonpayment of premium; or

(b) Thirty (30) days before the effective date of cancellation if **We** cancel for other reason.

(3) If this policy is cancelled, **We** will send the first **Named Insured** any premium refund due. If **You** initiate cancellation of this policy, the earned premium shall be computed in accordance with the customary short rate table and procedure. If **We** cancel this policy, the earned premium shall be computed on a pro rata basis. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter. However, payment of unearned premium is not a condition of cancellation.

(4) The mailing of notice as aforesaid shall be sufficient proof of notice, and the effective date of cancellation stated in the notice shall become the end of **Our Policy Period**.

## F. CONFORMITY WITH STATUTE.
The terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

## G. MAINTENANCE OF PRIMARY INSURANCE.

(1) **You** agree to maintain all **Primary Insurance**, as described in the Schedule of Primary Insurance, in full force and effect during **Our Policy Period**, except for reduction of aggregate limits due to payment of claims or claims expense. If such **Primary Insurance** is not maintained in full force and effect, or if any limits of insurance of a **Primary Policy** are less than those stated in the Schedule of Primary Insurance, or if **Primary Insurance** is unavailable to the **Insured** due to bankruptcy or insolvency of the **Primary Insurer**, or if there is any material change in the coverage under any **Primary Insurance**, the insurance afforded by this policy shall apply in the same manner as though such **Primary Policies** and limits of insurance had been in effect, so maintained and unchanged.

(2) Notwithstanding anything to the contrary in (1) above, in the event of cancellation or termination of any **Primary Insurance**, this policy shall cease to apply at the same time without notice to the **Insured**.

5191 1-86



(3) **You** agree to notify **Us** promptly if any **Primary Insurance** is cancelled or terminated.

**H.  NAMED INSURED'S REPRESENTATIONS.**  By acceptance of this policy, **You** agree that:

(1)  The statements in the Declarations and application are **Your** agreements and representations; and that those statements are accurate and complete; and that this policy is issued and continued in reliance upon the truth of those representations; and

(2)  This policy embodies all agreements existing between **You** and **Us** or any of **Our** agents relating to this insurance.

**I.  NOTICE OF OCCURRENCE, CLAIM OR SUIT, INSURED'S DUTY.**

(1)  The **Insured** must see to it that **We** are notified promptly in writing of an occurrence which may result in a claim under this policy.

(2)  If a claim is made or **Suit** is brought against any **Insured**, the **Insured** must see to it that **We** receive prompt written notice of the claim or **Suit**.

(3)  The **Insured** or their representative must:

(a)  Immediately send **Us** copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**; and

(b)  Authorize **Us** to obtain records and other information.

**J.  OTHER INSURANCE.**

If there is any (1) **Other Insurance**, or (2) insurance available to the **Insured** on an extended re-porting period basis under either a **Primary Policy** or **Other Insurance**, or (3) insurance available to the **Insured** on a retroactive basis under either a **Primary Policy** or **Other Insurance**, this policy shall apply as excess of and not contributory with such insurance.

If the **Insured** has another Excess Liability Policy with **Us** (other than a policy issued to apply spe-cifically excess of this policy) which provides coverage for a claim also covered by this policy, the **Insured** must elect which policy shall apply.  **We** shall be liable under the policy so elected and shall not be liable under any other policy.

**K.  PAYMENT OF LOSS, ACTION AGAINST COMPANY.**  **We** shall be liable for payment under this policy only after (1) the **Insured** and the **Primary Insurers** have paid or become obligated to pay the applicable amount or amounts of such insurance, (2) the **Insured** and the **Primary Insurers** have fulfilled or agreed to fulfill their obligation to defend and pay expenses; and (3) final judgment has been rendered against the **Insured** after actual trial or after written agreement has been reached by the **Insured**, the claimant, the **Primary Insurers**, and **Us**.  Any claim made against **Us** by the **Insured** under this policy shall be made within twelve (12) months after the **Insured** pays or become obligated to pay an amount of damages in excess of the amount of **Primary Insurance** or **Other Insurance**.

If any subsequent payments are made or required to be made by the **Insured** on account of the same event causing injury or damage, additional claims may be similarly made from time to time and shall be similarly subject to the provisions of this condition.

Nothing contained in this policy shall give any person or organization any right to join **Us** as co-defendant in any action against any **Insured** to determine that **Insured's** liability.

**L.  PREMIUM.**  The premium for this policy shall be computed on the basis stated in the Declara-tions.  The advance premium stated in the Declarations, unless otherwise specified under "Basis

Page 8 of 9

5191 1-86

of Premium" as "Flat Charge," is an estimated premium only. The earned premium shall be computed upon termination of this policy, or the end of each twelve (12) month period if the policy is written for a three-year term, whichever is first. If the earned premium is more than the advance premium paid, the first **Named Insured** shall pay the excess to **Us**; if less, **We** shall return to the first **Named Insured** the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve (12) months of **Our** policy period, and subject further to any policy minimum premium. The policy minimum premium is a minimum amount of premium earned under this policy in the event **You** cancel this policy.

**M. SUBROGATION.** In the event of any payment under this policy, the **Insured** must notify **Us** of any of the **Insured's** rights of recovery against any person or organization. **We** shall be subrogated to all such rights and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after loss to prejudice such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by **Us**, if there is no recovery, **We** shall bear the expense thereof. If there is a recovery, **We** shall be reimbursed in full from such recovery for the amount of all expenses incurred by **Us** before apportionment of such recovery as herein provided.

**N. WORKERS' COMPENSATION AGREEMENT.** With respect to injury or death of any officer or other employee of the **Insured** or the spouse, child, parent, brother or sister of an employee of the **Insured**, which arises out of and in the course of employment by the **Insured**, it is a condition to the recovery of any loss under this policy and the **Insured** represents and agrees that it has not abrogated and will not abrogate its common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise. In the event the **Insured** should abrogate such defenses, the insurance provided by this policy shall not apply to injury or damage to such officer or employee or the spouse, child, parent, brother or sister of that employee.

IN WITNESS WHEREOF, **We** have caused this policy to be signed by **Our** President and Secretary, but the same shall not be binding upon **Us** unless it has been countersigned on the Declarations page by a duly authorized agent of **Ours**.

_____
Secretary

_____
President

5191 1-86